### In re CLEMENT, State Excise Com'r.

(Supreme Court, Appellate Division, Fourth Department. May 1, 1907.)

INTOXICATING LIQUORS—CANCELLATION OF LICENSE—GAMING.

> Defendant was the tenant of a room wherein he conducted a saloon, and another person was the tenant of an adjoining room in which he conducted a billiard hall, there being a door between the two rooms which was usually open, and at times persons playing billiards ordered drinks from defendant's room. The other person installed a nickel slot machine in his room. Defendant protested against the presence of the machine, and there was no evidence of fraud or collusion. *Held*, that defendant's liquor tax certificate was not subject to cancellation on the ground that he suffered gaming to be carried on in a place appertaining to or connected with his premises.
>
> Kruse and Robson, JJ., dissenting.

Appeal from Special Term, Erie County.

Petition by Maynard N. Clement, as state commissioner of excise, to revoke the liquor tax certificate issued to John Ulinski. From an order dismissing the proceedings, the commissioner appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

H. Walter Lee, for appellant.
Henry W. Killeen, for respondent.

WILLIAMS, J. The order should be affirmed, with costs.

The certificate was issued April 28, 1905, to expire April 30, 1906, authorizing the defendant to traffic in liquor at premises situate on the southwest corner of Wasson avenue and Iron street, Lackawanna, Erie county, N. Y. The petitioner claimed that on October 13, 1905, the defendant permitted gambling in said premises by means of a nickel slot machine. The defendant denied this. The evidence was taken before a referee and reported to the court, and the court made the

order appealed from based upon such evidence. It appeared by the evidence that the defendant's brother owned the building in which defendant carried on his business. The defendant leased the front room on the first floor, about 26 feet square, for his business, and occupied no other part of the building. Just back of this room, and adjoining it, was another room, leased by one Smiegel and occupied for a billiard room, which he conducted. Other parts of the building were leased and occupied by other parties. There was a partition between the two rooms, and a door in such partition 6 feet wide. There was a door leading from defendant's room out towards the street, and two doors from the back room—one at the side leading outdoors, and the other at the back leading to other parts of the building. The door in the partition between the two rooms was usually left open. Smiegel leased the back room from June 25, 1905. Neither of these two men was interested in the business of the other, or in the room rented by him. Their business was entirely separate, except that people playing billiards ordered drinks from defendant's room when they desired. The slot machine was put in the back of the billiard room by Smiegel about October 5, 1905. As soon as defendant saw the slot machine there, he told Smiegel it was unlawful, and he must take it out, and, if he did not, he would tell the owner of the building, and he would put it out. Smiegel did not take the machine out, and defendant complained to the owner of the building about it, who spoke to Smiegel, and he said he would take it out. The machine was still there on the 13th of October, 1905, when the agents of the state excise commissioner went there and used it, and upon their evidence the proceeding was based and the revocation of the license sought to be obtained.

No claim has been made that there was any collusion between defendant and Smiegel with reference to the maintenance of the machine. From the first, the defendant insisted it should be taken out. We desire this to be distinctly understood. The Special Term justice in his opinion expressly says: "No question of collusion or bad faith has been suggested in this matter." And the concession was made by counsel in this court and on the argument to the same effect. There is no evidence in the record tending to show collusion or fraud or bad faith on defendant's part. The defendant always claimed, and now claims, that he tried to have the machine taken out when it was first put in, and did all he could to procure it to be done, and that he had no power himself to remove it or prevent its maintenance and use by Smiegel. It will be seen that while in the petition it was claimed that the defendant permitted gambling in his premises, the evidence showed that the gambling was in the premises occupied by Smiegel, and the license was sought to be revoked, finally, upon the claim that defendant suffered and permitted the gambling to be carried on in a place appertaining to or connected with his premises. The matter was disposed of at Special Term upon the holding that, even though the place where the gambling was carried on might be regarded as one appertaining to or connected with the defendant's premises, still the defendant did not suffer or permit it to be maintained there, and the case was not one covered by the statute. In this conclusion we concur with the Special Term upon the grounds very fully set forth in the opin-

ion there given. We would not regard it necessary to add any opinion of our own, except that we want to make it entirely clear that our affirmance of this order is not to be regarded as a precedent in cases where premises are located as these are, but where there is connivance and collusion between the parties to maintain and carry on the gambling. In such case there would be a violation of the statute, and the license should be revoked. That element concededly does not exist in the present case, and we are deciding this case in view of the conditions here existing, and not establishing a precedent for any other different case.

Order affirmed, with costs. All concur, except KRUSE and ROBSON, JJ., who dissent.

KRUSE, J. (dissenting). As I view this case, it presents a plain, but unsuccessful, attempt upon the part of the licensee, whose liquor tax certificate the state commissioner of excise seeks to have revoked, to evade the provisions of the liquor tax law relating to gambling. That law provides:

"No corporation, association, copartnership or person, who, as owner or agent, shall suffer or permit any gambling to be done in the place designated by the liquor tax certificate as that in which the traffic in liquors is to be carried on, or in any yard, booth, garden, or any other place appertaining thereto, or connected therewith, or suffer or permit such premises to become disorderly, or carries on or permits to be carried on or is interested in any traffic, business or occupation, the carrying on of which is a violation of the law." Liquor Tax Law, Laws 1896, p. 66, c. 112, § 23, subd. 7, as amended by Laws 1900, p. 857, c. 637.

An applicant for a liquor tax certificate is also required to sign and swear to a statement containing, among other things:

"The premises where such business is to be carried on, stating the street and number, if the premises have a street and number, and otherwise such apt description as will reasonably indicate the locality thereof, and also the specific location on the premises of the bar or place at which the liquors are to be sold." Liquor Tax Law, Laws 1896, p. 60, c. 112, § 17, subd. 3, as amended by Laws 1897, p. 219, c. 312.

The petition in this proceeding states that the applicant presented a verified statement, under subdivision 1 of section 11 of the liquor tax law, relative to the traffic in liquors by the applicant at premises situated on the southwest corner of Wasson avenue and Iron street, Lackawanna, Erie county, N. Y. What other facts were set forth in the statement does not appear. The statement itself is not contained in the record. The petition further alleges that the tax was paid and the liquor tax certificate issued, designating the place where the traffic in liquor was to be carried on thereunder, as specified in the application statement. These allegations are not denied by the answer. It appears by the evidence that the building in which the liquor business was carried on was owned by the brother of the licensee. There was a poolroom back of the barroom, and for at least a part of the time while the gambling machine was in the poolroom the door on the side street leading into the poolroom was permanently closed, so that customers of the poolroom were required to go through the barroom.

The barroom proper was 26 feet square. While there was a partition between the poolroom and the barroom, there was an open archway in the middle of the partition, making practically one room. The archway was 6 feet wide, with 10 feet of partition on each side. There were sliding doors, but they were very seldom closed. The licensee himself testified that somebody might possibly by mistake or in fun shut them. As a rule they were not closed. The gambling machine was placed in the poolroom nearly opposite the archway. It could be seen from the bar, and persons went back and forth patronizing the bar, pool tables, and gambling machine. The licensee claims that he was not interested in the poolroom business and that he had no control over the poolroom; that his brother leased to him only the barroom. He admitted, however, that Smiegel, the man who, as he claims, ran the poolroom, and who tended bar for him when he was not there, took drinks to customers in the poolroom, but denied that he personally ever served drinks in the poolroom. Upon that subject he testified:

"Q. Sometimes your customers would go into the poolroom and watch the people playing pool, would they not? A. Yes, sir. Q. And sometimes you would serve them cigars and drinks in the poolroom? A. I never took any drink there. Whenever they got through playing and wanted a drink, they would call for it, and the one who was running the poolroom would come to me and pay for the drinks and take the drinks over to them. Q. And ordinarily that was Smiegel, wasn't it? A. Yes, sir. Q. And Smiegel frequently came and got drinks and carried them to the customers in and during the daytime in October last? A. Yes, sir."

Whether this poolroom is to be regarded as a part of the barroom or not, I have no doubt that the licensee had the legal right under his liquor tax certificate to serve his customers in the poolroom, and it was so used and a part of the licensed premises. It is true that the licensee testified that he complained of the use of the machine and demanded that it be taken out; but this was not sufficient to absolve him from the consequences of its being used, and, besides, I am not persuaded that he desired or expected that the machine would be removed and the gambling operations cease. It would have been an easy matter for him to have closed the doors, and kept them closed, and stop the serving of liquors in the poolroom.

It is, however, earnestly contended on his part that, since the licensee had a lease of only 26 feet square where the bar was located, he had no control over the poolroom, and that therefore he was not responsible for the gambling which was done in the poolroom, and so it is claimed that he did not permit or suffer the gambling. This seems to have been the view of the learned justice at Special Term. It does not seem to me that a licensee can thus absolve himself from responsibility for the premises becoming disorderly. If this were permissible, the licensee might have taken a lease of one end of his barroom sufficient for the bar, and disclaim any responsibility for what occurred in any part of the room away from the bar. He might even refrain from acquiring any right to the room or premises save that of selling liquor over the bar, leaving the room to be used and occupied by others for other purposes, and thus escape the consequences which he would other-

wise incur. If persons who traffic in intoxicating liquors may thus relieve themselves from responsibility, it affords an easy way of evading the provisions of the liquor tax law against gambling and other disorderly practices being carried on in connection with that business, and practically nullifies and makes ineffective that salutary provision.

I think the order should be reversed, and the liquor tax certificate revoked and canceled.

ROBSON, J., concurs.