In re FARLEY, State Commissioner of Excise.

(Supreme Court, Special Term, Albany County.   October 20, 1911.)

INTOXICATING LIQUORS (§ 106*)—REVOCATION OF LIQUOR TAX CERTIFICATE—
GROUNDS.

> A holder of a liquor tax certificate, occupying premises on the ground
> floor, permitted the existence of a door leading into a hallway, which
> led to the second floor of the adjoining building, where gambling was
> carried on.  Uniformed waiters, not in the holder's employ, carried, to his
> knowledge, liquors from his place of business to the gambling room.  It
> was not necessary for him to maintain the doorway for his patrons.
> *Held*, that a violation of Liquor Tax Law (Consol. Laws 1909, c. 34) § 30,
> subd. "e," justified revocation of his certificate.
>
> [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§
> 113–116; Dec. Dig. § 106.*]

Louis M. King, for petitioner.
Peter A. Delaney, for respondent.

RUDD, J.  A liquor tax certificate was issued to Charles Fisher on
September 16, 1910, permitting him to traffic in liquors at Nos. 425
and 427 Broadway, Albany.  The petition filed by the state commis-
sioner of excise alleges that Charles Fisher "did wrongfully and un-
lawfully suffer and permit and did have an opening and means of en-
trance and passageway for persons and things between the room and
place where traffic in liquors was carried on and other rooms and
places where gambling was suffered and permitted."  The petition al-
leges certain specific dates upon which the certificate holder violated
the provisions of the law above stated.

There is little dispute as to the conditions existing upon which the
application for revocation is based.  The certificated premises, known
as Nos. 425 and 427 Broadway, are located on the southeasterly cor-
ner of Broadway and State street, Albany.  The premises are upon the
ground floor.  The entrance to the saloon proper is in the corner of the
building at the junction of State street and Broadway.  Next adjoin-
ing the building in which the premises are situated is a building known
as Nos. 30 and 32 State street.  There is an entrance to Nos. 30 and
32 State street through a door entering into a hallway on the first floor
thereof, in which hallway is a flight of stairs going to the floor above.

In the saloon, or barroom, of Fisher, there is, near the entrance on
the northerly side of the room, a lunch stand.  East thereof, and on
the north side of the room, of the barroom, there is a lunchroom, with
an entrance from State street into the lunchroom, and a doorway from
the lunchroom opening into the barroom.  Along the southerly side of
the barroom, occupying almost the entire depth of the room from east
to west, is a bar.  Near the easterly end of the bar, through the east
wall of the barroom, is a doorway leading into the hall of the premi-
ses adjoining, Nos. 30 and 32 State street, into which hall, as above

stated, there is a doorway leading directly from State street. The door from the barroom into this hallway is not far from the foot of the flight of stairs leading to the second floor of premises 30 and 32 State street. The foot of the flight of stairs is just south of the doorway leading from the barroom into this hall. Up the flight of stairs one story, to the second story of premises 30 and 32 State street, at the head of the stairs to the left, is an opening into a large room, which was used for gambling. There is no dispute as to this. There were in this room, on the second floor of the premises referred to, different devices for gambling. The special agents of the excise department won and lost money gambling in this room, on the occasions specified in the petition.

While the agents of the excise department were in this gambling room, there were other men in the room gambling, and the special agents saw a waiter serving beer and liquors to those at the tables gambling, and the waiter served the agents. The waiter took the orders from those in the gambling room who desired to drink, went out of the door from the gambling room, into the hall, down the stairs of which I have spoken, through the door at the east end of the barroom, obtaining their liquors at the bar in the presence of Charles Fisher, went out of the door into the hall, up the stairs, serving the liquors to those in the gambling room.

Those are in substance the facts upon which the petitioner asks the court for an order revoking the license. The charge against the certificate holder, and the sole ground upon which the revocation of his liquor tax certificate is sought, is that he violated that portion of subdivision "e" of section 30 of the liquor tax law (Consol. Laws 1909, c. 34), which makes it unlawful for any holder of the liquor tax certificate "to suffer, permit, or have any opening, or means of entrance or passageway for persons or things between the room or place where the traffic in liquors is carried on, and any other room or place where any person whosoever suffers or permits any gambling." There is no allegation that the certificate holder, Fisher, was the proprietor of or connected with the gambling room.

The state excise commissioner contends that the certificate holder, Fisher, violated the law in suffering or permitting the doorway to exist leading from the certificated premises into the hall of the State street building, and that thereby he permitted or had an opening, or means of entrance, or passageway, for persons or things between the certificated premises and a room where some person suffered or permitted gambling. The respondent contends that the question here must be determined solely upon the physical condition that existed, irrespective of the evidence in the case with reference to the serving of liquor by the waiter, who went from the certificated premises, as above described, and served liquor in the gambling room, which was there consumed.

The respondent claims that to hold that the certificate holder is guilty of an unlawful act, because he had the doorway from the certificated premises into the hall at the east of the barroom, would mean that the certificate holder would be equally guilty of an unlawful act,

provided there was a gambling room in a building three or four doors away from the premises, provided that there was some door through which a person could go from the saloon, thence through hallways upstairs, or by means of an elevator could eventually reach a room some distance away, if you please, where gambling was being carried on, without the knowledge of the certificate holder. In other words, for illustration, that it would mean that a certificate holder, occupying premises on the ground floor of a great office building, might be held liable to be guilty of an unlawful act, if from some door in the certificated premises you could get into the office building, and thence by hallways, or elevators, could reach some room in the fifteenth story of the building where gambling was being conducted; the respondent contending that the law does not contemplate such a situation as in the supposed case, or in the case here under consideration, and that the present law was enacted to correct what the Legislature deemed to be a weakness in the statute as it existed when the Ulinski Case, 119 App. Div. 622, 104 N. Y. Supp. 25, was decided in May, 1907.

In the Ulinski Case it was held, in a proceeding to revoke a certificate, it appearing that the defendant was the lessee of a single room in a building, that an adjoining room containing a slot machine was leased by another person in no way connected with the defendant in business, and that the defendant had complained to the owner of the slot machine, and to the landlord, asking that it be removed, that the certificate should not be revoked; but it was specifically stated by the court that the decision was not a precedent in any other cases where the premises are similarly located, but where there is evidence of connivance between the parties to carry on gambling. The provision of the law as it existed when the Ulinski Case was passed upon was that no person "shall suffer or permit any gambling to be done in the place designated by the liquor tax certificate as that in which the traffic in liquors is to be carried on, or in any yard, booth, garden, or any other place appertaining thereto, or connected therewith." The Legislature recognized, as we all do, that the combination of the sale and consumption of intoxicating liquors with gambling is bad, and sought by making the statute as it now is to guard against that evil.

The issue is pretty sharply defined—the petitioner contending that the license should be revoked, because of the open or unlocked door from the east of the licensed premises to the hallway of the premises next adjoining, through which door persons could and did pass from the barroom up the stairs into the gambling room; the respondent claiming that the door in question is not "*between* the room or place where the traffic in liquors is carried on, *and* any other room or place, where any person whosoever suffers or permits any gambling." In other words, the respondent contends that, in order to violate the statute, it must appear that the doorway is directly between the saloon and the gambling room; that is, that the doorway is simply an opening in a partition, which partition separates the gambling room and the saloon, or else that there must be a clearly defined passageway leading from one room directly to the other, and that this condition or situation of doorway and passageway must exist physically,

irrespective of and apart from indication or act, or omission to act, on the part of the holder of the certificate.

I have in mind the expressions of Justice Crane in the Finley Case, 58 Misc. Rep. 640, 110 N. Y. Supp. 71, when he said that the liquor trafficker should "be strictly held to the provisions which permit him to carry on such business in our midst, yet the court is bound to give those provisions a reasonable interpretation and not construe them beyond their fair meaning, or extend prohibition to cases and situations which the law has not covered. In other words, the court can and should merely declare and enforce what the statute has enacted." In order that a reasonable interpretation and a fair meaning should be given to the statute, and in order that it may be determined whether the certificate holder did suffer or permit a condition to exist which is prohibited by law, it is, in my opinion not only necessary to examine the physical conditions, but also quite as important to determine the legal effect of the acts of the certificate holder, by inquiring into all that he did, or permitted to be done, in connection with the use of the premises covering which the certificate had been issued.

Therefore it seems that the evidence showing that liquors were taken from the bar of the licensed premises and served to those in the gambling room, and that a waiter was going to and fro through the doorway in question, carrying a tray, as waiters are accustomed to do, serving liquors purchased from Fisher at the bar to be drunk by the patrons of the gambling room, is at least one of the conditions which this court is bound to consider in trying to determine whether Fisher suffered or permitted any opening, or means of entrance, or passageway, for persons or things, between his barroom and the gambling room.

Much is made by the respondent of the fact that the gambling room was on the second floor of the adjoining building. What of it, if Fisher permitted an opening, or means of entrance, or passageway, for persons or things, between his room and the room in question on the second floor of the adjoining building? Fisher testified that he did not employ the waiter who was serving liquors in the gambling room. That is quite immaterial, and of no importance. It might be that it would add to the business of the gambling room if the proprietor of that establishment paid the waiter. It is in evidence that men dressed as waiters, wearing white coats and aprons, took liquors from the bar in the presence of Fisher. It was not necessary for Fisher to have the doorway open at the east end of his barroom leading into the hallway, in order that patrons might come and go through a State street entrance less prominent than the entrance to his saloon on the corner, for the reason that there was a doorway from his barroom into a lunchroom, and thence directly out upon State street.

The only explanation Fisher gave of the existence of the door at the east end of his barroom was for air. That meant, of course, that it was left open for air. The court asked him this question:

"Q. Didn't you know what was on the other side of an open door that you left open for air? A. I knew there was a gambling room upstairs, but I did not see any one going up."

Of course, that testimony related to the conditions which existed generally during the existence of the license. It appears that it does not relate to any specific time, and the question of the court did not refer to a gambling room, and the reply that Fisher made that he knew that there was a gambling room upstairs was purely voluntary on his part. Subsequently, under examination by his counsel, after several questions had been asked, he finally said that he learned that there was a gambling room up there after the papers in this application for revocation were served upon him. The answer which he gave to the court is not consistent with the statements which he subsequently made in his own favor.

If a person, licensed to traffic in intoxicating liquors, can, in the face of the statute, permit a doorway to exist, leading from the licensed premises into an outer hallway, in which, or from which, there is no room connected with the licensed premises, or under the control of the certificate holder, through which doorway waiters in the presence of the certificate holder take liquors upon trays evidently for the purpose of consumption, and the certificate holder can remain in entire ignorance of what is being done with the liquors, or where they are being taken, or what there is in the immediate surroundings that creates the demand for liquors from his bar, it certainly affords a simple and easy manner of violating the law, the plain intent of which is to prevent the combination to which I have previously referred.

It appears that there was a means of going from the licensed premises to the gambling room, even if it was necessary to go into a hall and upstairs. The way was well-defined, and persons did go and pass to and fro, from one room to the other, and it was proven that the liquor seller did send liquors from the barroom to the gambling room. He did suffer and permit a means of entrance, or a passageway, or a way of going from his barroom to this gambling room, which the law prohibits, and the existence of which was a violation of the statute.

An order may be entered granting the petition, upon the grounds alleged, for a revocation of the license issued to Charles Fisher, with costs.